SAMUEL K. WILSON, Respondent, *against* THE METROPOLITAN ELEVATED RAILWAY COMPANY, Appellant.

(Decided February 7th, 1887.)

The president of a corporation, in pursuance of a resolution of the directors voting him a salary, drew notes therefor in the name of the corporation to himself as payee, and signed them himself as president. They were indorsed by such president in blank and discounted by plaintiff. *Held,* that plaintiff, taking the notes before maturity and for value, was a *bona fide* holder, and was not put upon inquiry as to whether they were given for the president's salary, or whether the salary had been earned, or whether there was any by-law or resolution giving the salary passed before the services were rendered, or whether the defendant's directors had exceeded their powers or had done anything wrong in the premises; that even if plaintiff knew that the notes were given for the president's salary, he was not bound to inquire whether the salary was earned or legally payable, the mere fact of the president discounting such notes being an assertion to that effect which plaintiff was entitled to rely upon.

Plaintiff cashed for K. a draft drawn by a corporation and, holding the same uncollected, subsequently transferred it to K. in payment of notes transferred to plaintiff by K. *Held,* that this was equivalent to a cash payment for such notes.

APPEAL from a judgment of this court entered upon the verdict of a jury rendered by direction of the court.

The facts are stated in the opinion.

*Julian T. Davies* and *Charles A. Gardiner,* for appellant.

*Francis C. Barlow,* for respondent.

BOOKSTAVER, J. — Plaintiff sued on a promissory note, for $2,500, made by the defendant to its own order. At the close of the testimony, each party moved for a direction of a verdict in its favor; both parties thereby conceding that the facts in the case raised questions of law only, to be determined by the court; and that there were no questions of fact to be passed upon by the jury. Upon such request, the court directed the jury to render a verdict in favor of the plaintiff, and against the defendant, subject to the opinion of the court. Thereafter, and during the same term, the court, after hearing counsel for the respective parties, sustained the verdict, and judgment was entered thereon, for $3,117.21. Defendant made a motion for a new trial; which was denied. Defendant appealed from both the judgment and order.

As far as the making of the note is concerned, the material facts, to be considered upon this appeal, are as follows :

The defendant is a duly organized domestic corporation. On the 20th of May, 1879, it leased its railway, franchises, etc., to the Manhattan Railway Company, a duly organized domestic corporation ; which, thereupon, took possession of defendant's railway, and has, ever since, with unimportant exceptions, operated the same.

Sylvester H. Kneeland was a stockholder, a director, and the president of the defendant, from the 8th of November,

1882, until August, 1884. What services he rendered, if any, as such president, does not appear. The office of president, up to about the time of making the note in question, had never been a salaried one. No agreement was made by the defendant to pay Kneeland a salary, or to give him any compensation for his services, before the 5th of June, 1884.

Shortly after 3 o'clock, on the day last named, committees representing the defendant and the Manhattan Railway Company, entered into a memorandum agreement, for the merger and consolidation of the two companies. This agreement provided that, "the Manhattan Company consolidated to assume all liabilities" (of the defendant) . . . "and to receive all assets" (of the defendant). Subsequently, the two corporations were consolidated, substantially on the basis stated in the memorandum.

About 3.30 P.M., on the same day, at a meeting of the board of directors of the defendant, regularly appointed, the committee of that company presented the memorandum agreement, so entered into, and it was unanimously adopted. At the same meeting the following resolution was unanimously adopted: "Resolved that S. H. Kneeland, the president of the company, shall be paid a salary of $25,000 per annum, from the time of his election as such." Mr. Kneeland presided at this meeting and put the resolution to vote.

On the 18th of June, 1884, another duly appointed meeting of the directors of defendant was held; at which the following resolution was unanimously adopted: "That the president be and he is authorized to use the credit of the company, by issuing and negotiating its notes, or otherwise, for paying the salary of said president; said notes to be signed by the president, and countersigned by the treasurer, in the usual way and form, and not to exceed the limit of the amount heretofore authorized." Mr. Kneeland presided at this meeting and put the question to vote.

In accordance with the provisions of the last resolution,

notes were issued, signed by S. H. Kneeland, as president of the defendant, and countersigned by the treasurer; made to the order of Mr. Kneeland, and indorsed by him; aggregating, as it is claimed, $48,950. These notes matured at various dates, from August 8 to October 31, 1884.

This suit is brought upon one of such notes, which was transferred directly to the plaintiff, by Kneeland, under the following circumstances:

On May 26th, 1884, plaintiff cashed, for Mr. Kneeland, a check for $7,650, drawn by the Mercantile Trust Company on itself; by giving him the full value thereof. Plaintiff held the check uncollected, until June 28th, 1884, on which day Kneeland sent to him the note in suit, and two others of the notes issued, as above stated, of like amount and tenor, and varying slightly in dates. The plaintiff then discounted the three notes, giving Kneeland, as the proceeds of the discount, the check of the Mercantile Trust Company, instead of cash, and charging him with the $7,650, advanced to him on May 25th, together with interest to the date of the discount, and crediting him with the three notes discounted, less the interest thereon to their maturity.

This left a balance against Kneeland of $233, which the latter paid to the plaintiff in cash. We think this was the same, in effect, as though the plaintiff had collected the Trust Company's check, for which he had paid value, and which he then owned, and had paid cash to Kneeland, on the discount of the three notes.

Two of the notes thus discounted were paid. The one in suit was not, and hence this action.

It thus appears that the plaintiff obtained the note before maturity and for value; and he would not be affected by a failure or want of consideration between Kneeland and the defendant, unless he had notice of it.

When a corporation gives a note for goods bought or services rendered, it cannot be possible that a person who takes the note for value, before maturity, is bound to inquire whether the goods were bought, or the services

were rendered; and we think this an elementary principle of law. Indeed, defendant's counsel virtually conceded, on the argument, that plaintiff paid full value for the note in controversy, before maturity; but claims that he had notice of irregularities in the inception of the notes, or the circumstances attending the making of the same, and the transfer to him, were such as to put him on inquiry as to their validity.

It is not claimed that plaintiff had actual notice of any such irregularities or infirmity in the notes; but it is claimed that the note in suit was signed by the president of the corporation, and indorsed directly to himself, its president and trustee; and that the plaintiff was thus notified it was a contract between the corporation and one occupying towards it a fiduciary or trust relation, which defendant could repudiate at its option.

An examination of the note shows that it was not indorsed directly to Kneeland himself, but was indorsed in blank, which was equivalent to making it payable to bearer.

The notes being thus presented to plaintiff, we think, did not put him on inquiry as to whether or not they were given for his salary; nor whether or not the salary had been earned; nor whether there was any by-law or resolution giving the salary passed before the services were rendered; nor whether the defendant's directors had exceeded their powers, or had done any wrong in the premises; but should have put him on inquiry as to whether or not Mr. Kneeland was using the obligations of the defendant in his individual business, and thus committing a breach of trust; and of nothing else whatever. And if the fact had turned out according to the appearances, and he had diverted the notes of the company to his own use, without authority, the plaintiff could not have recovered on them. But the fact was, that Kneeland was not misapplying the paper of the corporation; but was using it exactly in accordance with the resolution of June 18th, 1884.

It is analogous to the case where one partner uses firm

paper, apparently for his individual purposes. If such use was unauthorized, and the person taking it knew it was unauthorized, there could be no recovery by him on such paper; but if the firm authorized such use, or if it should turn out that the business, although in form for the benefit of the individual, was in reality a co-partnership transaction, then the holder of such paper could recover.

Appellant also contends that one who purchases a note from an agent or trustee of a corporation must, at his peril, see that its issue and negotiation are within the authority under which the agent can legally act, and that the plaintiff, therefore, was bound to inquire by what authority Kneeland signed and negotiated the note in suit. Granting that this is so, then, had plaintiff made inquiry on this subject, the resolution before mentioned would have clearly shown by what authority Mr. Kneeland signed and negotiated the note; and that, apparently, it was within the legal power of the directors to pass. Such inquiry would not have shown that there was no authority in the directors to make this provision for salary; nor that the salary had not been earned.

But if the plaintiff knew, or was bound to know, that the notes were given for defendant's salary, he was not bound to inquire whether the salary was earned, or was legally payable; for one who takes a note or check, purporting to be given by a corporation for goods bought or services rendered, is not bound to inquire whether the goods were bought, or the services were rendered; for these are extrinsic facts, peculiarly within the knowledge of the agent; and it has been held that a "party dealing with an agent . . . may take the representation of the agent, as to any extrinsic fact, which rests peculiarly within the knowledge of the agent, and which cannot be ascertained by a comparison of the power with the act done under it." See the *Butchers' & Drovers' Bank Case* (16 N. Y. 135). In that case, the teller of a bank had authority to certify checks, when the drawer had funds; and he certified a check when the drawer had no funds; but the bank was held bound,

because the question of "funds or no funds" was an "extrinsic fact, peculiarly within the knowledge of the agent." In that case, the natural way in which the person taking the check could have ascertained that fact, was to inquire of the teller; and he, by the act of certifying the check, had already represented that there were funds. In *North River Bank* v. *Aymar* (3 Hill 262), an agent who had authority to make notes in the business of his principal, made them in his own business and had them discounted. It was held that the mere act of making the notes, and procuring them to be discounted, was an assertion by the agent, that the acts were done in the business of his principal; although the agent made no representations on that subject, other than presenting the notes for discount. This principle is held in many other cases, and rests upon the fact, that the doing of the act, and the exercising the authority by the agent, is an assertion by the principal that the proper conditions exist; and we think that this principle applies to this case.

Having arrived at this conclusion, it is unnecessary to examine the other questions argued upon the appeal.

If the directors exceeded their authority, or were guilty of fraud or conspiracy, in granting the salary, or authorizing the execution and negotiation of the notes, they would be liable to the parties injured, in a proper action, brought to recover for such injuries.

We therefore think the judgment should be affirmed, with costs.

LARREMORE, Ch. J., and J. F. DALY, J., concurred.

Judgment affirmed, with costs.